UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ERIC STAGNO,

Defendant.

No. 2:17-cr-00163-TLN

**ORDER**

This matter is before the Court on Defendant Eric Stagno's ("Defendant") Appeal from Conviction by a Magistrate Judge. (ECF No. 71.) Defendant filed his brief on August 20, 2019. (ECF No. 84.) The Government filed an answering brief on October 1, 2019. (ECF No. 89.) On November 21, 2019, the Court heard oral argument on the matter. After carefully considering the parties' arguments and for the reasons set forth below, the Court AFFIRMS Defendant's conviction.

///

///

///

///

///

///

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose from three disturbances caused by Defendant in August of 2017 at a Department of Veterans Affairs ("VA") clinic in Stockton, California. (ECF No. 89 at 4.) On all three occasions, Defendant, a VA patient, shouted threatening, angry, and insulting words — including vulgarities and racial slurs — at VA staff and patients. (*Id.*) Defendant's conduct escalated during the third occasion on August 29, 2017, which prompted the Government to file a criminal complaint on September 1, 2017. (ECF No. 38 at 3.)

On September 7, 2017, the Government filed a two-count information against Defendant. (ECF No. 10.) Count one charged Defendant with assaulting, resisting, or impeding certain officers or employees in violation of 18 U.S.C. § 111(a). (*Id.* at 1.) Count two charged Defendant with disorderly conduct in violation of 38 U.S.C. § 901 and 38 C.F.R. §§ 1.218(a)(5) and (b)(11). (*Id.* at 2.) Both counts are misdemeanors. (*Id.* at 1–2.)

The magistrate court held a three-day jury trial on April 16 through April 18, 2018. On April 18, 2018, the jury returned a verdict finding Defendant not guilty on count one and guilty on count two. (ECF No. 60.) The magistrate court sentenced Defendant to three years of probation and 50 hours of community service to be completed within the first year of probation. (ECF No. 70.)

Defendant filed a notice of appeal directly with the Ninth Circuit on June 5, 2018. (ECF No. 71.) On April 15, 2019, Defendant filed a motion to remand the appeal pursuant to 18 U.S.C. § 3402. The Ninth Circuit remanded the appeal to this Court on July 9, 2019. (ECF No. 80.)

## II. STANDARD OF REVIEW

"A defendant is entitled to a jury instruction on a defense theory if the theory has a basis in law and in the record." *United States v. Hayes*, 794 F.2d 1348, 1350 (9th Cir. 1986). "We review *de novo* whether an instruction is 'supported by law.'" *United States v. Anguiano-Morfin*, 713 F.3d 1208, 1209 (9th Cir. 2013) (citation omitted). "We review for an abuse of discretion whether it has 'some foundation in the evidence.'" *Id.* (citation omitted). "The adequacy of the jury instructions, however, is determined by examining the instructions as a whole." *Hayes*, 794 F.2d at 1350. "[I]t is not error to refuse a proposed instruction so long as the other instructions in

their entirety cover that theory." *Id.* "The district court has broad discretion in formulating the instructions and need not give an instruction in the precise language proposed by the defendant." *Id.* "Imperfectly formulated jury instructions will serve as a basis for overturning a conviction only upon a showing of abuse of discretion." *Id.*

### III. ANALYSIS

The disorderly conduct regulation at issue is 38 C.F.R. § 1.218(a)(5), which states,

> Conduct on [VA] property which creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language; or unwarranted loitering, sleeping, or assembly is prohibited.

Defendant argues that the magistrate court erred by refusing two of his proposed jury instructions.[1] The Court will address Defendant's proposed jury instructions in turn.

### A. Proposed Jury Instruction Number Seven

The magistrate court first refused the following proposed jury instruction:

> As used in 38 CFR § 1.218(a)(5), "improper language" means language which by its very utterance inflicts injury or tends to incite immediate breach of the peace. However, the mere use of racist insults is not considered "improper language" under this ordinance unless accompanied by other language tending to incite a breach of the peace.

> In determining whether language is likely to lead to a breach of the peace the jury should consider whether the person hearing the language has been trained in responding to insulting language as part of the person's employment, such as a law enforcement officer or psychiatric facility staff member.

Defendant argues that by refusing this instruction, the magistrate court (1) deprived Defendant of his right to have the jury instructed as to his defense theory and (2) permitted the

---

[1] During oral argument, Defendant also argued that the magistrate judge erred by failing to hold a bench trial. As the Government correctly pointed out during its response, Defendant did not raise the issue of a bench trial in its brief. The Court also notes that Defendant failed to provide any case law to suggest that a jury trial was improper. Therefore, the Court declines to address the merits of Defendant's argument.

jury to convict Defendant based on protected speech.  (ECF No. 84 at 11.)  In opposition, the

Government contends (1) the First Amendment does not protect speech that is disruptive to the

operation of a government facility, (2) the instructions given fully allowed Defendant to argue his

defense theory, and (3) the proposed definition of "improper language" was unnecessary.  (ECF

No. 89 at 7.)  Because the Court concludes that Defendant's proposed instruction is not supported

by law, the Court need not and does not reach the parties' remaining arguments.  *See Hayes*, 794

F.2d at 1350.

Defendant argues that several Supreme Court cases support his proposed instruction.

(ECF No. 84 at 14.)  However, Defendant's haphazard use of authority is unpersuasive at best and

incorrect at worst.  Although the Government fails to distinguish Defendant's cases, the Court

will do so now.

Defendant asserts that in *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992), the Supreme

Court struck down a disorderly conduct statute that prohibited racist fighting words because the

statute was non-viewpoint neutral.  (ECF No. 84 at 14.)  In *R.A.V.*, the petitioner allegedly burned

a cross on a black family's lawn.  505 U.S. at 379.  The city of St. Paul charged petitioner with

violating a bias-motivated crime ordinance, which prohibited the display of a symbol when done

with the knowledge that such conduct would arouse "anger, alarm, or resentment in others on the

basis of race, color, creed, religion, or gender."  *Id.* at 380.  Although the First Amendment

generally does not protect fighting words, the Supreme Court held that the ordinance was facially

unconstitutional as a content and viewpoint-based speech restriction because the ordinance only

restricted fighting words about specific disfavored subjects: racial, religious, or gender-related

intolerance.  *Id.* at 391.  The Court stated, "Selectivity of this sort creates the possibility that the

city is seeking to handicap the expression of particular ideas."  *Id.* at 394.

Contrary to Defendant's implication, *R.A.V.* does not stand for the proposition that the

government cannot regulate racist speech.  The Supreme Court simply held that the ordinance at

issue in *R.A.V.* was unconstitutional because it *only* punished certain subjects or viewpoints.  *Id.*

at 391.  Unlike the ordinance in *R.A.V.*, the regulation in the instant case is neither content nor

viewpoint-based because it does not restrict specific subjects.  Rather, the regulation here

generally prohibits "loud, abusive, or otherwise improper language." 38 C.F.R. § 1.218(a)(5). Therefore, Defendant's reliance on *R.A.V.* is unpersuasive.

Defendant next asserts that in *Virginia v. Black*, 538 U.S. 343 (2003), the Supreme Court struck down jury instructions that permitted a jury to convict based on expressive conduct alone. (ECF No. 84 at 14.) In *Virginia*, a Virginia law prohibited cross burning done with the intent to intimidate. 538 U.S. at 348. The Court determined that the law did not violate the First Amendment because "true threats" are unprotected speech. *Id.* at 363. However, the Court struck down the statute based on a provision that stated, "Any such burning of a cross shall be prima facie evidence of an intent to intimidate a person or group of persons." *Id.* The Court held that the prima facie evidence provision was overbroad because "a burning cross is not always intended to intimidate" and the provision created "an unacceptable risk of the suppression of ideas." *Id.* at 365.

Again, Defendant's authority does not support his assertion. Defendant broadly asserts that the *Virginia* Court held that a jury cannot convict someone based on "expressive conduct alone." (ECF No. 84 at 14.) Yet Defendant's interpretation of *Virginia* is incorrect and at odds with basic First Amendment principles. In *Virginia*, the Supreme Court was concerned that the prima facie evidence provision as written would allow a person to be convicted even when cross burnings constituted protected speech as opposed to unprotected threats. 538 U.S. at 363–365. Inherent in the Court's holding is that a person may be convicted solely for expressive conduct under certain circumstances. Moreover, the Court explicitly recognized, "The protections afforded by the First Amendment, however, are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the Constitution." *Id.* at 358. Accordingly, Defendant's reliance on *Virginia* is unavailing.

The thrust of Defendant's argument is that by failing to give his requested jury instruction, the magistrate judge failed to instruct the jury on First Amendment protections that applied to some of the offensive statements he made. (ECF No. 84 at 16.) Yet Defendant overlooks — or possibly ignores — Ninth Circuit precedent that undermines his argument. In *United States v. Szabo*, 760 F.3d 997 (9th Cir. 2014), which Defendant's counsel himself argued before the Ninth

5

Circuit, the Ninth Circuit examined 38 C.F.R. § 1.218(a)(5) under similar facts. The defendant in *Szabo*, a patient at the Sacramento VA Medical Center, was convicted of disorderly conduct in violation of 38 C.F.R. § 1.218(a)(5) based on a situation where he yelled expletives, derogatory comments, and threats at staff members in a VA hospital. 760 F.3d at 1000–1001. The defendant appealed to the Ninth Circuit, arguing that 38 C.F.R. § 1.218(a)(5) violated the First Amendment. *Id.* at 1001.

The Court rejected the defendant's argument. It explained that even "where protected speech is at issue, the degree to which the government may regulate such speech depends on the nature of the forum." *Id.* at 1002. The Court also stated that "VA medical facilities are 'non-public' fora." *Id.*; *see also Preminger v. Principi*, 422 F.3d 815, 824 (9th Cir. 2005). As such, "restrictions on speech in VA medical facilities do not violate the First Amendment so long as they are (1) reasonable in light of the purpose served by the forum and (2) viewpoint neutral." *Szabo*, 760 F.3d at 1002. The Court held that the defendant's conduct did not constitute protected speech because it involved true threats. *Id.* However, the Court emphasized that even if defendant's conduct *did* constitute protected speech, 38 C.F.R. § 1.218(a)(5) was not unconstitutional as applied to his conduct because it was viewpoint neutral and reasonable in light of the purpose served by the forum.[2] *Id.* at 1003; *see also Preminger*, 422 F.3d at 826.

Defendant's proposed jury instruction, which defines "improper language" as words that "inflict injury or tend to incite immediate breach of the peace," is incorrect because it suggests Defendant's speech must constitute fighting words to be punishable. Neither case law nor the regulation itself supports Defendant's definition. But regardless of whether Defendant's speech constitutes protected speech or fighting words, *Szabo* clearly establishes that the government may properly restrict even protected speech if it disturbs the normal operation of a VA hospital. 760

---

[2] More specifically, the Court concluded that the government is entitled to prohibit disturbances such as the defendant's because "(1) the purpose of VA facilities is to serve and care for veterans, (2) many veterans have heightened sensitivities, and (3) disturbances . . . can trigger psychological reactions from the VA patient population." *Szabo*, 760 F.3d at 1003. The Court also noted, "The government's interest in caring for veteran patients . . . is plainly a legitimate government interest. Accordingly, prohibiting a visitor from yelling obscenities and threatening physical violence is eminently reasonable in view of this goal." *Id.*

F.3d at 1003.  Indeed, the magistrate court gave a proper jury instruction to that effect: jury instruction number four.  (ECF No. 84 at 26); *see also United States v. Agront*, 773 F.3d 192, 197 (9th Cir. 2014) (finding that 38 C.F.R. § 1.218(a)(5) is not vague because "the quantum of '[d]isorderly conduct' . . . that is required to violate the regulation is conduct . . . [that] would tend to disturb the normal operation of a VA facility").

In sum, Defendant's proposed jury instruction number seven is not supported by law, and the magistrate court did not err by refusing to give the instruction.[3]  *See Hayes*, 794 F.2d at 1350.

### B.    Proposed Jury Instruction Number Eight

The magistrate court next rejected Defendant's proposed jury instruction number eight, which states,

> In order to convict a defendant for violating 38 CFR §1.218(a)(5) for interfering with the operations of a Veterans Facility, the Government must prove that the defendant's conduct involved (a substantial interference and was) more than merely engaging in a pattern of disruptive behavior.

According to Defendant, a jury could have found that Defendant's conduct was a pattern of disruptive behavior but not a substantial interference with the operation of the clinic.  (ECF No. 84 at 19.)  Defendant claims that his proposed instruction stems from commentary that represents the VA's own interpretation of 38 C.F.R. § 1.218(a)(5).  (ECF No. 84 at 18.)  The cited commentary states as follows,

> VA regulations also prescribe rules of conduct for patients and other individuals who have access to VA facilities. See 38 CFR 1.218.  In particular, § 1.218(a)(5) prohibits persons on VA property from causing a wide variety of disturbances, including creating "loud or unusual noise," obstructing public areas, and impeding

---

[3]    Defendant argues that the second half of his proposed jury instruction number seven stems from Supreme Court cases that suggest a police officer's training should be considered when determining if speech directed at the police officer constitutes fighting words.  (ECF No. 84 at 15.)  Defendant's proposed instruction extends this concept to VA hospital staff, who he argues are trained to handle disruptive patients and therefore less likely to be provoked.  (ECF No. 84 at 16.)  Notably, Defendant only cites cases that discuss the unique nature of police interactions.  He cites no authority to suggest such a rule applies to mental health professionals.  Further, as discussed, the government can regulate speech on VA hospital premises whether it constitutes fighting words or not.  As such, Defendant's proposed instruction, which creates a heightened standard for VA staff, is irrelevant, unsupported, and improper.

or disrupting "the performance of official duties by Government employees." The sole enforcement mechanism provided by paragraph (a)(5) is "arrest and removal from the premises." 38 CFR 1.218(a)(5). VA has determined that arrest is generally not an appropriate remedy in a situation where the Department must balance the rights and needs of a disruptive patient against the need to protect other patients, guests, and staff. Some patients establish a pattern of disruptive behavior when interacting with VA personnel or when they are on VA property, and we believe that by understanding these patterns of behavior, planning for such behavior in advance, and setting safe conditions for care delivery, we can intervene in ways that can prevent subsequent episodes requiring removal and arrest.

75 FR 69881-01.

Even assuming the Court is required to consider the cited commentary, the Court declines to adopt Defendant's unfounded interpretation. Although the commentary encourages VA facilities to use methods to prevent the need for arrests, the commentary does not a draw line between "patterns of disruptive behavior" and "substantial interference." In fact, the commentary does not even include the phrase "substantial interference." Moreover, although the commentary suggests that "arrest is generally not an appropriate remedy," it also acknowledges that the regulation expressly allows for arrests. *See* 38 C.F.R. § 1.218(b) ("Conduct in violation of the rules and regulations set forth in paragraph (a) of this section subjects an offender to *arrest and removal* from the premises.") (emphasis added). Defendant cannot create legal rules from thin air.

In sum, it is unclear how Defendant molded his very favorable proposed instruction from the cited commentary. The Court is not so generous. Because Defendant's proposed jury instruction number eight is not supported by law, the Court finds that the magistrate court did not err in rejecting it. *See Hayes*, 794 F.2d at 1350.

**IV. CONCLUSION**

For the foregoing reasons, the Court hereby AFFIRMS Defendant's conviction.

IT IS SO ORDERED.

Dated: December 20, 2019

_____
Troy L. Nunley
United States District Judge

8